UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PROGRESS RAIL SERVICES
CORPORATION, an Alabama
corporation,

     Plaintiff,

v.                               CASE No.: 8:04-CV-200-T-23EAJ

HILLSBOROUGH REGIONAL TRANSIT
AUTHORITY, an independent
special taxing district,

     Defendant.

_____ /

## REPORT & RECOMMENDATION

Before the court are Plaintiff Progress Rail Services Corporation's Motion for Summary Judgment[1] (Dkt. 23), Defendant Hillsborough Regional Transit Authority's response[2] (Dkt. 27), Defendant the City of Tampa's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Dkt. 28) as well as citations of supplemental authority filed by Progress Rail Services Corporation and the City of Tampa, with leave of court subsequent to oral argument. (Dkts. 44 and 45). Oral argument on Plaintiff's Motion for Summary Judgment was held on March 4, 2005.

---

[1] This matter has been referred to the undersigned by the district court for consideration and a Report and Recommendation. See local Rules 6.01(b) and 6.01(c), M.D. Fla. (Dkt. 30).

[2] Hillsborough Regional Transit Authority's response does not address the motion for summary judgment because the motion is not directed at its claims (Dkt. 27).

**Background**

Progress Rail Services Corporation ("Progress") filed its complaint against the Hillsborough Regional Transit Authority ("Hart"), on February 3, 2004 in relation to the final payment of $340,203.84 that Progress alleges it is owed for the goods and/or services Progress provided to Hart under the terms of their contract (Dkt. 1).[3]   The contract between Progress and Hart required Progress to furnish supplies to Hart in furtherance of creating the Tampa-Ybor Historic Streetcar System for connecting Tampa's downtown area to the Ybor City historic district.

According to Progress's complaint, Progress and Hart entered into a written contract which required Progress to supply the rail materials needed to construct the track for the streetcar (Dkt. 1 at 2).   Progress alleges that Hart breached the contract by failing to pay for the rail materials furnished by Progress, despite Progress's repeated demands for payment.   Hart raises several affirmative defenses, including Progress's alleged failure to fulfill conditions precedent to the contract at issue and failure to mitigate damages (Dkt. 4 at 2).   In addition, Hart has counterclaimed alleging, _inter alia_, that Progress breached the contract by supplying defective and substandard supplies in an

---

[3] Progress's complaint states that it seeks $340,203.84 in compensatory damages (Dkt. 1 at 4).   However, its motion for summary judgment states a lesser amount: $304,490.93 (Dkt. 23 at 2).   This inconsistency does not bear on any issue relevant to the determination of the instant motion for summary judgment.

untimely manner.

The City of Tampa filed its motion to intervene on April 7, 2004 (Dkt. 5); the motion was granted over the objection of Progress on May 17, 2004 (Dkt. 10). The order granting the City's motion to intervene stated: "Both the City of Tampa's claim and the Hillsborough Area Regional Transit Authority's ("HARTLINE") counterclaim against Progress Rail Services Corporation ("Progress") require a determination of whether Progress breached its contract with HARTLINE" (Dkt. 10 at 1).

On May 18, 2004, the City filed its answer and affirmative defenses and brought a counterclaim against Progress contending, among other things, that the City entered into a joint venture with Hart and that Progress's alleged breach of its contract with Hart damaged the City.[4] (Dkt. 12)

Progress filed the instant motion for summary judgment on December 28, 2004 contending that the City's counterclaim against Progress is insufficient under Rule 56(c), Fed. R. Civ. P., to establish that the City meets the essential elements of a joint

---

[4] The City's counterclaim states, "The City entered into a contract with Herzog Contracting Corporation ("Herzog"), wherein the City agreed to provide Herzog with the Materials provided by Progress through HART, and Herzog agreed to build the Project." (Dkt. 12 at 4). The City further states, "Progress supplied defective Materials . . . therefore the City . . . was unable to timely furnish the Materials to Herzog." (Id.) Herzog has asserted a claim for delay damages against the City in a sum over one million dollars. The City argues that any contract balance of Progress is subject to a right of setoff, and that Progress is further liable for damages caused by its late performance. (Id.)

venturer.   The City argues that the two Interlocal Agreements entered into between Hart and the City and a "Tri-Party" Agreement entered into between the City, Hart, and the Tampa Historic Streetcar, Inc. ("THSI") establish that Hart and the City were joint venturers.[5]

For the reasons stated hereafter, summary judgment in favor of Progress is appropriate.

**Summary Judgment Standard**

Summary judgment is only appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor."  Hayes v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995).  At the summary

---

[5] The two Interlocal Agreements between the City and Hart were filed as exhibits to Progress's motion for summary judgment (Dkt. 23).  The first Agreement, dated November 6, 1997, is titled "Interlocal Agreement for Design & Engineering of the Tampa-Ybor Historic Electric Streetcar HART Agreement No. 97-08-01" (Dkt. 23, Ex. 1 at 2).  The second Agreement, dated June 6, 1998, is titled "Interlocal Agreement for the Tampa-Ybor Historic Electric Streetcar Project HART Agreement No. 98-05-06" (Dkt. 23, Ex. 2 at 3).  Both Interlocal Agreements are prefaced by a short resolution approving them and providing an effective date (Dkt. 23, Ex. 1 at 1-2; Ex. 2 at 1-2).  The Tri-Party Agreement was filed on March 3, 2004 and was entered into on December 17, 2001 between the City, Hart, and the THSI (Dkt. 41, Ex. 7).  During oral argument on the summary judgment motion, both parties stated that the two Interlocal Agreements contemplated the formation of the Tri-Party Agreement.  Therefore, the court will also consider the Tri-Party Agreement in its summary judgment analysis.

4

judgment stage, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986).  The inquiry presented is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

In reviewing a grant of summary judgment, the court views all evidence in the light most favorable to the party opposing the motion.[6]  Harris v. H & W Contracting Co., 102 F.3d 516, 519 (11th Cir. 1996).   The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  If the movant meets this burden, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exists.  See Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993).  Summary judgment must be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322-23.

---

[6] Thus, if a reasonable fact finder could draw more than one factual inference from evaluating the evidence, and that inference introduces a genuine issue of material fact, then the court should not grant the motion for summary judgment.  See Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988).

**Discussion**

Progress asserts that the City lacks standing to intervene in Progress's suit against Hart because the City and Hart are not joint venturers, and the existence of a joint venture between the City and Hart is the sole basis for the City's counterclaim against Progress.  The determination of this motion requires the resolution of two issues: (1) do the 1997 and 1998 Interlocal Agreements and the Tri-Party Agreement establish a _prima facie_ case of joint venture; and, (2) must this court delay ruling on this dispositive motion until the completion of discovery?

I.   Progress's motion for summary judgment turns on whether the four corners of the 1997 and 1998 Interlocal Agreements between Hart and the City as well as the Tri-Party Agreement between the City, Hart, and the THSI created a joint venture between the parties.[7]  There is no dispute that Florida law governs this issue.

---

[7]   The City asks the court to consider evidence in addition to the two Interlocal Agreements and the Tri-Party Agreement: namely the affidavit of Thomas C. Capell (a City of Tampa employee), a resolution dated July 31, 2003, and a memorandum providing additional information about the resolution (Dkt. 28, Ex. 1).  The resolution is titled "A Resolution Awarding a Contract to Progress Rail Services for Supplying Track Material and Special Track Work for the Tampa/Ybor Historic Electric Streetcar Project as Specified, and Authorizing the Executive Director to Execute Contract Documents and Providing an Effective Date."  The resolution is numbered R2000-07-46, and it is one page in length. Attached to resolution R2000-07-46 is a memorandum dated July 19, 2000 which provides "backup information" about the resolution. During the hearing, the City proffered other materials for the court's consideration in determining the instant motion for summary judgment.  However, because the court finds that the two Interlocal

6

As stated by this court in <u>Offices Togolais Des Phosphates v. Mulberry Phosphates</u>, "[u]nder Florida law, a joint venture is a special combination of two or more persons who, in some specific venture, seek a profit jointly without the existence between them of any actual partnership, corporation, or other business entity." No.: 97-1736-CIV-T-23C, 1999 U.S. Dist. LEXIS 19272, at *18 (M.D. Fla. May 19, 1999)(internal citations and quotations omitted). The creation of a joint venture depends on the intent of the parties. <u>Tidewater Construction Co. v. Monroe County, Florida</u>, 146 So. 209, 211 (Fla. 1933); <u>see also</u> <u>Pinnacle Port Cmty. Ass'n. Inc. v. Orenstein</u>, 872 F.2d 1536, 1539 n. 4 (11th Cir. 1989). "A joint venture, like a partnership, may be created by express or implied contract, and the contractual relationship must consist of the

_____

Agreements and the Tri-Party Agreement are unambiguous and contain valid merger clauses, this court will not consider any documents or materials except the two binding Interlocal Agreements and the Tri-Party Agreement. "It is a cardinal rule that the construction of all written instruments is a question of law to be determined by the court where the language used is clear, plain, certain, undisputed, unambiguous, unequivocal, and not subject to conflicting inferences." <u>Royal Am. Realty, Inc. v. Bank of Palm Beach & Trust Co.</u>, 215 So. 2d 336, 337 (Fla. 4th Dist. Ct. App. 1968). Further, "In the construction of contracts[,] the intention of the parties is to govern. Such intention is ordinarily deduced from the language employed when the same is without ambiguity; however, if the language used does create an ambiguity, then parole evidence is properly admissible, not for the purpose of changing or varying the terms of the written instrument, but to elucidate, explain, or clarify the intentions of the parties." <u>Id.</u> at 338. Additionally, a valid merger clause is "an express statement that the parties agree that the agreement is completely integrated so as to exclude extrinsic evidence." Allen Farnsworth, <u>Contracts</u> 476 § 7.3 (2d ed. 1990).

following elements: (1) a common purpose; (2) a joint proprietary interest in the subject matter; (3) the right to share profits and duty to share losses; and (4) joint control or right of control." Williams v. Obstfeld, 314 F.3d 1270, 1275-76 (11th Cir. 2002).[8]  To find that a partnership or joint venture exists, Florida courts require that each of the four factors must be established.  Id.[9]

The City asserts that the 1998 Interlocal Agreement's description of the project as a "joint project" (Dkt. 23, Ex. 2 at 2) is a written agreement sufficient to establish a joint venture (Dkt. 28 at 4), while Progress contends that the "joint project" language does not itself create a joint venture, but merely satisfies the common purpose element (Dkt. 23 at 10, n. 2). Regardless of whether the contract expressly referred to the parties' relationship as a joint venture, the relationship created by the contract must still establish the four required elements. Williams, 314 F.3d at 1275-76.

Although it is undisputed that the Agreements establish the first element of a joint venture – a common purpose between the parties - Progress and the City disagree as to whether the four

_____

[8] Florida law provides that "a joint venture is a form of partnership, and both types of entities are generally governed by the same rules of law." Williams, 314 F.3d at 1275, citing, Kislak v. Kreedian, 95 So. 2d 510, 514 (Fla. 1957).

[9] As stated in Chase Manhattan Mortgage Corporation v. Scott, Royce, Harris, Bryan, Barra & Jorgensen, P.A., "The cases on joint venture require a stronger link than the mere quest for profits." 694 So. 2d 827, 831 (Fla. 4th Dist. Ct. App. 1997).

corners of the Agreements establish the other three elements: a joint propriety interest, the right to share profits and the duty to share losses, and joint control as between Hart and the City.

## A.  Joint Proprietary Interest

A joint proprietary interest generally requires joint ownership of the subject matter of the contract.  <u>Dreyfuss v. Dreyfuss</u>, 701 So. 2d 437, 439 (Fla. 3d Dist. Ct. App. 1997).  Here, although Progress contends that the Agreements did not create a joint proprietary interest between the City and Hart, the City's position on this element is more compelling.

Article VII of the 1998 Interlocal Agreement, Section 1, specifies that "HART and the CITY shall own the Streetcar Stations and the Streetcar Line proportionate to its respective overall contribution to the Project" (Dkt. 23, Ex. 2 at 8).  Based on the express language of the 1998 Interlocal Agreement, Progress's assertion that "Hart has no ownership interest in the Project and is merely charged with the obligations set forth in the Interlocal Agreements" is simply inaccurate (Dkt. 23 at 11).  Although Article VII, Section 2 of the 1998 Interlocal Agreement specifies that Hart solely owns the streetcar vehicles, joint ownership is not required for every item covered by the contract.

Here, the facts are distinguishable from <u>S&W Air Vac Systems Inc. v. Department of Revenue</u>, 697 So. 2d 1313, 1315-16 (Fla. 5th Dist. Ct. App. 1997), where the court found that the joint

proprietary interest element was not satisfied where one party owned the machines and the other party owned the land in a contract involving the placement of air machines in gas station parking lots.  In S&W Air Vac Systems, the machines and land were the only assets involved in the contract, and neither were jointly owned. As noted above, the City and Hart did jointly own the Streetcar stations and Streetcar Lines.  Therefore, there is no material issue of fact as to whether the Agreements between Hart and the City satisfy the element of "joint proprietary interest."

**B.  Joint Control**

In a joint venture, "one joint venturer can bind the others in matters within the scope of the joint enterprise." Pinnacle, 872 F.2d at 1539 (citing Fla. Stat. Ann. § 620.60 (West 1977)).  Joint control cannot be established when one party has exclusive control over the undertaking.  See Julian Consol. Inc. v. Conrad, 553 So. 2d 784, 784 (Fla. 1st Dist. Ct. App. 1989).  Parties can divide control authority by mutual agreement. Arango v. Reyka, 507 So. 2d 1211, 1213 (Fla. 4th Dist. Ct. App. 1987).  For joint venture purposes, the parties must have mutual control over the subject matter of the venture and the authority to bind one another with respect to the subject matter of the venture.  Pinnacle, 872 F.2d at 1540.

Hart and the City did have mutual control over certain aspects of the project involved in this case.  For example, through the

creation of a joint committee, Hart and the City exercised joint control over the selection of the design team, the approval of the design plans, the establishment of a supervisory committee to manage the status of the Project, and the funding of the Project (Dkt. 23, Ex. 1 at 2-4).

However, neither Hart nor the City had the authority to bind each other with respect to these aspects of the project. The City concedes in its memorandum that "[n]either Hart nor the City could enter into any contract with third parties without each-other's approval" (Dkt. 28 at 13). Furthermore, the City and Hart each had equal voting authority on their joint management committee.

Where the actions of one party do not bind the other, joint control does not exist. Pinnacle, 872 F.2d at 1540 ("inherent in contracts of this nature is the right and the authority of any one of the [joint venturers] to bind the others with reference to the subject matter of the [joint venture]") (citation omitted). In Pinnacle, the parties involved in a condominium construction project each had agents on site; however, the agents had separate areas of control and could not bind each other. Pinnacle, 872 F.2d at 1540. The parties in Pinnacle did have preliminary authority to act on certain matters; however, the other party had to grant final approval to authorize the transaction. The court noted that one of the parties essentially acted as a general contractor for the other. Id. at 1540.

11

Progress argues that Article V of the 1998 Interlocal Agreement gave the City sole authority to enter into an agreement to construct the streetcar line (Dkt. 23 at 15). Progress further notes that this separation of control is the reason that Hart is not a party to the agreement between the City and Herzog, and that the City is not a party to the agreement between Progress and Hart.

During oral argument, the City argued that the aspect of joint control which includes the ability of one party to bind the other is not a separate element of a joint venture but is rather the ultimate result of having a joint venture. For this proposition, the City cited Drew v. Hobbs, a 1932 case involving a contract between two individuals to purchase property, in which the court determined that "the legal effect alone of the relationship of joint adventurers . . . [is that] each of said adventurers acquir[es] power to bind the other in matters strictly within the scope of the joint enterprise." 140 So. 211, 213 (Fla. 1932). The City also cited the more recent case of Williams for the proposition that mutuality of agency is a consequence of having a joint venture, rather than a specific element of a joint venture. 314 F.3d at 1276.

In addition, the City referenced Deal Farms, Inc. v. Farm & Ranch Supply, Inc., where the court noted: "A contract of joint adventure is in effect one of mutual agency, each adventurer acting as a principal in his own behalf and as agent for his co-

adventurer.  Each one of several joint adventurers has the power to bind the others in matters that are strictly within the scope of the joint enterprise.  Such power is inherent in the relationship." 382 So. 2d 888, 891 (Fla. 1st Dist. Ct. App. 1980), citing, 8 Fla. Jur. 2D *Business Relationships* § 691.

The court declines to read the language cited by the City in Drew, Williams, and Deal Farms as altering the well-established four-part test under Florida law for establishing a joint venture.

In Drew, the court determined that the parties were involved in a joint venture based on a written contract to purchase property to resell at a profit.  140 So. at 212.  The court did not enumerate the elements of a joint venture, and the issue of whether a joint venture had been established was not a central issue in the case.  The issue presented was whether the co-adventurers were jointly and severally liable to creditors of the venture and the co-adventurers. (Id.) The language in Drew quoted above, which describes the "legal effect" of the joint venture as the ability of one adventurer to bind the other, does not relate to the elements of a joint venture but, instead, describes the rights of creditors to sue members of a joint venture for debts created in furtherance of the joint venture. Id. at 213.

Further, in Deal Farms, the focus of the joint venture discussion was on whether a creditor of one party to an alleged joint venture could sue a non-disclosed party to the alleged joint

venture.  382 So. 2d at 890-891.  The court did not reach the merits of whether a joint venture existed in <u>Deal Farms</u>, and it did not enumerate the elements of a joint venture.[10]  Instead, the court described joint ventures as contracts of "mutual agency, each adventurer acting as a principal in his own behalf and as agent for his co-adventurer." <u>Id.</u> at 891.  The requirement of mutual agency led the court to rule that "the rule of joinder applicable to partnerships also applies to joint adventurers, and that actions in behalf of the joint venture may be brought in the name of all of the joint adventurers." <u>Id.</u>

Lastly, in <u>Williams</u>, the court did enumerate the familiar elements of a joint venture, including joint control. 314 F.3d at 1275-1276.  The <u>Williams</u> court determined that joint control was absent because the parties did not share in control over the project, and one party overrode the decisions of the other party with regard to decisions related to the joint project.  <u>Id.</u> at 1276.[11]  The court did not reach a discussion of mutuality of agency and certainly did not state that the ability of one joint venturer

---

[10] The <u>Deal Farms</u> court stated, "Although it may be developed by further pleading and proof that the relationship between the plaintiffs here was not truly that of 'joint adventurers', we conclude that it is not essential to the maintenance of this action that appellee would be required to have knowledge of the interest of Deal Farms in the purchase of the farm equipment." <u>Id.</u>

[11] The <u>Williams</u> court also found that the parties had not agreed to share losses arising from their venture.  314 F.3d at 1276.

14

to bind another joint venturer was the result of having a joint venture, rather than a component of the essential element of "joint control."[12]

However, even if City's argument on this point had merit -- that joint control or mutuality of agency is not an element of a joint venture but the result of having a joint venture -- the City's argument must fail. The issue of whether the ability of one party to bind another is an element of a joint venture or the result of having a joint venture is immaterial in this case because the ability of Hart to bind the City is clearly absent.[13]

This court finds that the facts here are most analogous to those in Pinnacle. Neither the City nor Hart had the authority to bind the other. Instead, the City and Hart had separate duties and responsibilities, much akin to the sub-contractor analysis in

---

[12] No case cited by the City expressly states that the mutuality of agency component of joint control is the result of having a joint venture rather than an essential element required for the establishment of a joint venture.

[13] At the hearing, Progress pointed out that the City's ability to be bound in contract is limited by the City of Tampa's charter document, as well as Florida law. Progress's Supplemental Authority and Reference List cites the City of Tampa Charter Article VII, "Contracts and Bidding" section 8.01, to state that all contracts "made by the city shall be in writing, approved by the council upon recommendation of the mayor, and signed by the mayor, and attested and the official seal affixed thereto by the city clerk; otherwise any such instrument shall be void." (Dkt. 44 at 2). In addition, Florida Statute section 163.01(7)(c)(1996) states, "No separate legal or administrative entity created by an interlocal agreement shall possess the power or authority to . . . obligate financially a governmental unit participating in the interlocal agreement."

Pinnacle.  Further, the authority that the City and Hart reserved
to their joint committee strengthens Progress's argument that the
City and Hart did not have the authority to act on each other's
behalf because, if the parties had the authority to bind each other
in contract, there would be no need for decisions by joint
committee.  Because Hart and the City lacked the authority to bind
each other in matters within the scope of the joint project, the
City has not met its burden of proof that there are disputed issues
of fact as to the element of joint control.

## C.  Right to Share Profits, Duty to Share Losses

Although the non-moving party's failure to create a genuine
factual issue as to the third required element for a joint venture
could justify granting the summary judgment motion without further
analysis, it is also clear that the City has not met its burden of
proof as to the fourth element.

A joint venture requires a "mutuality of interest in both
profits and losses."  Williams, 314 F.3d at 1275, quoting,
Dreyfuss, 701 So. 2d at 439.  The absence of a right to share
profits and a duty to share losses is fatal to a joint venture
claim.  Williams, 314 F.3d at 1276.  Further, an intention to share
in the costs of production does not equate to an intention to share
profits and losses.  Fla. Mun. Power Agency v. Ohio Cas. Ins. Co.,
714 So. 2d 660, 661 (Fla. 5th Dist. Ct. App. 1998).  In addition,
as stated in S & W Air Vac Systems, "[t]o share in losses means

16

that each party is responsible or liable for the losses created by the venture and is exposed to liability, if any, to creditors or third parties."   697 So. 2d at 1316, <u>citing</u>, <u>Phillips v. United States Fid. & Guar. Co.</u>, 155 So. 2d 415, 419 (Fla. 2nd Dist. Ct. App. 1963).

The City argues that a sharing of profits and losses can be inferred from the Agreements' requirements that production costs be shared and that a non-profit corporation be created.  During oral argument, the City cited cases which state that sharing profits and losses can be inferred when one party invests capital and the other invests labor or ideas because, if the project fails, both parties will have lost something. <u>Fla. Tomato Packer, Inc. v. Wilson</u>, 296 So. 2d 536, 539 (Fla. 3d Dist. Ct. App. 1974) (where one party supplies the labor and the other party supplies the capital, this duty "actually and impliedly exists as a matter of law"); <u>see also</u> <u>Fla. Trading and Inv. Co. v. River Constr. Svs., Inc.</u>, 537 So. 2d 600, 602 (Fla. 2d Dist. Ct. App. 1989)(the mutuality of detriment created where one party supplies the labor, skills, or experience and the other party supplies the capital is sufficient to satisfy the sharing of losses because "in the event of a loss, the party supplying the knowhow would have exercised his skill in vain and the party supplying the capital investment would have suffered a diminishment thereof.") (internal citations omitted).

Progress responds that a mere intention to share in the costs

of production does not in and of itself equate to an intention to share profits and losses, or mutuality of detriment, because in sharing production costs, one party is not liable for the other's detriment. <u>Fla. Mun. Power Agency</u>, 714 So. 2d at 661.

This is not a case of choosing from conflicting inferences in the evidence; rather, there is a clear statement in the Agreements that the City has to make up for budgetary deficits. There is no similar statement in the Agreements obligating Hart.

In addition, this court is persuaded by Progress's argument that neither the City nor Hart intended to share profits because the Agreements expressly indicate that a non-profit corporation would be created upon completion of the project. Curiously, in support of its argument that the City and Hart did have a duty to share profits and losses, the City notes, "Hart and the City created a non-profit corporation through which the profits and losses would be handled." (Dkt. 28)(emphasis added). Article II, Section 3, of the 1998 Interlocal Agreement states, "It is also the parties' intent to establish a non-profit corporation which will manage, operate and maintain the Streetcar System." (Dkt. 23, ex. 1 at 3). However, Florida Statute Section 617.0301, Corporations Not For Profit, specifies that in Florida, a non-profit corporation can be organized for any lawful purpose "not for pecuniary profit."

F.S.A. § 617.0301 (2001).[14]  Therefore, by definition, a non-profit corporation in Florida cannot be organized for profit.

Also persuasive is Article IV, Section 2 of the 1998 Agreement.  There, Hart and the City expressly agreed that "any shortfall in the budget for basic services will be provided by the City" (Dkt. 23, Ex. 2 at 6).  Although the Agreement permitted either party to adjust services in response to a budget shortfall, the plain language of the Agreement clearly places the burden of losses solely on the City.

Furthermore, as to the "mutuality of detriment" argument posited by the City, the City's relationship with Hart is more akin to the sharing of production costs, as in <u>Florida Municipal Power Agency</u>, <u>supra</u>, than to the contribution of labor and experience by one party and the contribution of capital by the other party, as in <u>Florida Trading</u>, <u>supra</u>.  The City has failed to point to evidence creating a genuine factual issue as to the "mutuality of profits and losses" essential to the establishment of a joint venture.

Because the City has failed to demonstrate that a genuine issue of material fact exists as to whether it had joint control with Hart over the subject matter of the joint project, including

---

[14] Similarly, Florida Statute Section 620.8202, Partnerships, states "[a]n unincorporated non-profit organization is not a partnership under RUPA, even if it qualifies as a business, because it is not a 'for profit' organization."  F.S.A. § 620.8202 (2001).  As noted <u>supra</u> n. 8, a joint venture is a form of partnership.

the ability of Hart and the City to bind each other with respect to matters related to the project, and whether the City and Hart shared profits and losses, this court recommends that the motion for summary judgment (Dkt. 23) filed by Progress be granted.

**II.**  Notwithstanding the resolution of the first issue, must this court delay its ruling on the dispositive motion until discovery has been completed?  The City contends that a dispositive ruling on this case would be premature because it has not completed discovery (Dkt. 28 at 10).

Federal courts grant motions for summary judgment pursuant to Rule 56, Fed. R. Civ. P., only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Bivens Gardens Office v. Barnett Banks of Fla., 140 F.3d 898, 905 (11th Cir. 1998).  Where discovery is not complete, the facts are not sufficiently developed to enable the trial court to determine whether genuine issues of material fact exist. See Snook v. Trust Co. of Ga. Bank of Savannah, N.A., 859 F.2d 865, 870 (11th Cir. 1988).  However, the party bearing the burden of proof at trial must establish the existence of each essential element to avoid an entry of summary judgment. Celotex, 477 U.S. at 322; Pruitt v. P.P.G. Indus., Inc., 895 F.2d 734, 736 (11th Cir. 1990).

The City argues that granting a summary judgment motion before the close of discovery for this case, set for a July 2005 trial,

violates the Supreme Court's rationale in <u>Celotex</u> (Dkt. 28 at 10). Specifically, the City notes that the Supreme Court has stated, "[i]n our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.

However, the City has failed to specify what discovery is relevant to the issue raised in the summary judgment motion as to whether the City and Hart were joint venturers (Dkt. 28 at 10). Rather, the City argues that the Agreements between Hart and the City establish a <u>prima facie</u> showing of joint venture.  During oral argument, when given an opportunity to describe issues on which discovery would be helpful, the City failed to raise any relevant factual issue.  Although future discovery may produce information pertinent to the other issues in dispute between the parties, the finding of a joint venture is integral to the City's counterclaim against Progress and the Agreements in question support the position of Progress.[15]  The City's failure to defeat the summary judgment motion on this issue renders unnecessary other discovery on the counterclaim.

---

[15] See footnote 7, <u>supra</u>.  There is no ambiguity in these three Agreements which would allow the court to consider extrinsic evidence.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)   Plaintiff's **Motion for Summary Judgment** (Dkt. 23) be **GRANTED** and that the City of Tampa's counterclaim against Plaintiff be **dismissed**.

Dated: 04/12/2005

ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.   See 28 U.S.C. 636(b)(1).